Glenn STADHEIM and Harlan Stadheim,
Plaintiffs and Appellants,

v.

Richard BECKING, Defendant
and Respondent.

No. 12673.

Supreme Court of South Dakota.

Argued Jan. 22, 1980.

Decided March 26, 1980.

R. Greg Bartron of Osheim, Fox & Bartron, Watertown, for plaintiffs and appellants.

Thomas P. Tonner of Maynes, Tonner, Maynes & Tobin, Aberdeen, for defendant and respondent.

FOSHEIM, Justice.

Appellants, Glenn Stadheim and Harlan Stadheim, were engaged in a father-son farming operation. They brought this action to enjoin the respondent from obstructing a drainage ditch and to recover damages. The trial court granted the injunction, but denied damages. This appeal is from that part of the judgment denying damages. We reverse and remand.

On January 26, 1968, appellant Glenn Stadheim was granted an easement for a drainage ditch across a half section of land in Codington County. From 1972 through 1977, respondent Richard Becking leased one of the servient tenement quarters of land. In the summer of 1976, appellant Harlan Stadheim verbally informed the re-

spondent of the easement and warned him not to plug the drainage ditch. In November of 1976, however, the respondent created an obstruction to the drainage system, which was promptly discovered by appellants. Appellants recorded the easement on December 8, 1976, but did nothing further until April 28, 1977, when they had an attorney send the defendant a copy of the easement. On that same day, Harlan Stadheim informed the respondent by telephone that his attorney was mailing him a copy of the easement and demanded that he remove the obstruction so that appellants' newly planted barley would not be damaged in the event of a heavy rain. On May 4, 1977, the appellants checked the drainage ditch and concluded that because the water level had receded, the respondent must have cleaned out the obstruction. On June 14 and 15, 1977, however, a heavy rain occurred and the barley field on the lowland was flooded. Appellants then commenced this action. The respondent removed the obstruction approximately four days after being served with process. In the meantime, damage had been sustained to a large part of appellants' barley field.

Respondent does not seek review of that part of the judgment granting appellant an injunction. The essential issue on appeal is whether the trial court erred in denying damages to appellants by finding that appellants failed to avoid the consequences of the respondent's wrongful act and to mitigate their damages.[1] This rests on the argument that appellants should have promptly sought injunctive relief when they discovered the obstruction.

The doctrine of "avoidable consequences" is expressed in 22 Am.Jur.2d Damages § 43 (1965) as follows:

If the owner of property which is injured or threatened with injury fails to take reasonable precautions or to make reasonable expenditures to guard against or to minimize such injury, he cannot recover damages for any injuries which by the exercise of reasonable care he could have avoided. The law will not allow one to sit idly by and see his property injured or destroyed through forces negligently set in motion by another and then collect damages occasioned by his own failure to make reasonable exertion to arrest such injury or destruction. However, if the owner of property uses reasonable efforts to avoid further losses, his recovery will not be reduced in a suit for damages. [footnotes omitted].

The trial court indicated in its decision that the respondent was aware of the easement and that his actions were the proximate cause of the appellants' damage.

In *Chicago, Burlington & Quincy Railroad v. Wheaton*, 76 S.D. 467, 80 N.W.2d 868 (1957), the owner of land adjoining the railroad's right-of-way constructed a dam on a creek abutting the railroad grade, thus causing a lake to be formed with the railroad grade being the western retaining wall. When the creek flooded, a substantial portion of the railroad grade was washed away. As in this case, the plaintiff there sought an injunction and damages. The defense was that the railroad company, upon becoming aware of the existence of the dam, should have promptly sought an injunction to mitigate the damages which later occurred. We rejected that claim with this language:

The law does not require a person to take affirmative legal action to prevent another from suffering the result of his tortious act. It would seem to us that the duty to take the ambiguous action that appellant claims respondent should have taken would primarily lie with appellant whose continuous trespass was the underlying cause of the injury to respondent's property.

. . . . .

Hence, respondent cannot be held to have failed to mitigate the damages in

---

1. Some jurisdictions draw a distinction between the doctrine of avoidable consequences and the duty to mitigate damages. It was agreed at oral argument by counsel for both sides, however, that the terms may be used interchangeably for present purposes.

this case because he didn't apply for injunctive relief prior to the time of injury. 76 S.D. at 471–72, 80 N.W.2d at 870–71.

We need not decide here whether the *Chicago, Burlington & Quincy Railroad v. Wheaton* decision allies us with those jurisdictions which do not apply the avoidable consequences rule in cases of intentional and continuous torts involving property,[2] as where one riparian proprietor continuously detains the water in a stream unreasonably with reference to the rights of another riparian proprietor who is damaged thereby. 22 Am.Jur.2d Damages § 44 (1965). According to such cases, there is then an illegal invasion of the property rights of the latter, and he is under no legal obligation to exercise ordinary care to avoid or lessen damages. *Price v. High Shoals Manufacturing Co.*, 132 Ga. 246, 64 S.E. 87 (1909); 78 Am.Jur.2d Waters § 36 (1975). In this case, appellants employed all available avenues of persuasion short of promptly seeking an injunction. Suffice it to say that our holding in *Chicago, Burlington & Quincy Railroad v. Wheaton*, supra, excuses them from taking affirmative legal action to mitigate their damages under the circumstances existing in this case.

Finally, respondent claims that appellants did not exercise all reasonable efforts to avoid damage because the terms of the easement allow appellants access to the drainage system to clean it out and remove obstructions. It appears, however, that considerable tension and ill-feeling existed between the parties as evidenced by this statement attributed to the respondent and not denied: "You tell that * * * [Stadheim] that there is going to be two funerals." Any attempt on the part of appellants to go upon the land occupied by the respondent and clear the ditch may well have been hazardous. The duty to mitigate requires only reasonable efforts to prevent or minimize the damage within the bounds of common sense. *Steel v. J. I. Case Co.*, 197 Kan. 554, 419 P.2d 902 (1966). It is not reasonable to expect the injured party to risk serious harm. *Christman v. Maristella Compania Naviera*, 349 F.Supp. 845 (S.D.N.Y.1972).

That part of the judgment denying damages to appellants is reversed. The case is remanded accordingly.

All the Justices concur.

---

**2.** *American Smelting & Ref. Co. v. Riverside Dairy & Stock Farm*, 236 F. 510 (8th Cir. 1916); *Niagara Oil Co. v. Ogle*, 177 Ind. 292, 98 N.E. 60 (1962); *Allen v. Morris Bldg. Co.*, 360 Mich. 214, 103 N.W.2d 491 (1960); *McCullagh v. Goodyear Tire & Rubber Co.*, 342 Mich. 244, 69 N.W.2d 731 (1955); *Johnston v. City of Galva*, 316 Ill. 598, 147 N.E. 453 (1925); *Cumberland Grocery Co. v. Baugh's Adm'r*, 151 Ky. 641, 152 S.W. 565 (1913); *Shannon v. McNabb*, 29 Okl. 829, 120 P. 268 (1911).